177 So.2d 131 (1965)
PIONEER BANK & TRUST COMPANY, Plaintiff-Appellee,
v.
Howard F. FOGGIN, Defendant-Appellant.
No. 10402.
Court of Appeal of Louisiana, Second Circuit.
June 16, 1965.
Rehearing Denied July 29, 1965.
Writ Refused October 21, 1965.
*133 Robert G. Pugh, Shreveport, for appellant.
Bodenheimer, Looney & Jones, Shreveport, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
GLADNEY, Judge.
This action by plaintiff bank was brought for the purpose of securing a personal judgment against the accommodation endorser of a chattel mortgage note of which Herman M. Davis was the maker. Suit was instituted on February 17, 1964 for the balance due on the note after application of credits resulting from a judicial sale of the mortgaged automobile. From a judgment for plaintiff the defendant, Howard F. Foggin, has appealed.
The maker of the note, Herman M. Davis, shortly after entering the employment of the Shreveport Claims Service, a business owned and operated by the defendant, borrowed money from his employer in order to purchase an automobile. Foggin was repaid through a loan from appellee bank which was confected on March 16, 1962, the bank being represented in the transaction by Travis T. Hailey. In order to secure the indebtedness Herman M. Davis executed a chattel mortgage note evidencing the obligation of $2,909.50. The note was endorsed by Foggin. Monthly payments of $80.00 were paid as they came due by charges against the account of Davis, however, when the July payment became due the bank account of Davis did not have sufficient funds to discharge the monthly payment, and the bank thereupon transferred $80.00 from the bank account of the Shreveport Claims Service.
At this time Foggin became concerned as to his liability on the note. This was occasioned perhaps by several factors, one of which was that Davis had been discharged from the Shreveport Claims Service and had returned to Del Rio, Texas. Since the acquisition by Davis, the mortgaged Mercury automobile had been used by Mrs. Davis in Texas with the knowledge of Foggin. On May 14, 1962 the bank exchanged a Louisiana title certificate on the automobile for a Texas certificate of title at the request of Davis.
After the note was in default in July the defendant consulted with his attorney who advised cooperation with the bank in the recovery of the automobile which was located at the home of Davis in Del Rio, Texas. The bank informed Foggin that possession of the automobile could be obtained through a recovery bureau by an informal method, or through judicial proceedings taken in Texas and it would pursue the course selected by him. He directed the bank to seize the automobile in the quickest manner possible. After the car was returned to Shreveport by the recovery bureau and seized under a writ of sequestration while in the possession of the defendant, suit for its seizure and sale was instituted by the bank against Davis and Foggin, the action being in rem insofar as Davis was concerned. Foggin was personally served and judgment therein reserved all rights of the plaintiff bank against the defendant herein. At the judicial sale on July 24, 1963 the automobile, after due appraisal, was sold to the petitioning creditor for the sum of $1,200.00 which left a balance then due and owing on the promissory note of the amount herein sued for.
*134 The case is defended upon two major grounds. First, it is charged that the endorser was released from his obligation to the extent of the impairment of the value of the property removed forasmuch as the bank consented to the removal of the mortgaged automobile from Louisiana to Texas without the consent or knowledge of the endorser. Second, it is contended the seizure of the automobile in Texas was illegal and in consequence thereof all judicial processes that issued from the Caddo Parish Court were null and void and could not form the basis for a deficiency judgment.
The defense first urged is based on LSA-C.C. Art. 3061 which provides:
"The surety is discharged when by the act of the creditor, the subrogation to his rights, mortgages and privileges can no longer be operated in favor of the surety."
Whether or not Foggin had prior knowledge of and had acquiesced in the exchange of the Louisiana title certificate for a Texas title certificate is a question of fact. Hailey admitted that he had not expressly informed Foggin of the exchange but believed that this was unnecessary and in furtherance of an understanding between Davis, Foggin and Hailey had at the time the loan was negotiated. At that time Mrs. Davis was employed at an air force base in Del Rio, Texas, and she was attempting to get a transfer of her position to the Barksdale Air Force Base in Shreveport in order to be with her husband. Hailey testified that during the discussion which took place it was stated the car was to be used by Mrs. Davis and that Davis was arranging to purchase a house in Shreveport. It was explained that the Louisiana title certificate was exchanged in order that a Texas license could be secured for the automobile. Also it developed that Davis possessed other automobiles which were to be used by him in connection with his work in Shreveport. Foggin denied that he had any knowledge of the intended transfer of the title certificate. Because he was not so informed appellant urges his discharge from liability by reason of an impairment of his rights to the security which resulted from the removal of the mortgaged automobile from the State of Louisiana without his expressed or implied consent.
In order to obtain his release under the Civil Code Article quoted Foggin must show his right of subrogation was prejudiced by the transfer. Patterson-Redmond Equipment, Inc. v. Martin, La.App., 166 So.2d 65 (4th Cir. 1964); Central Sav. Bank & Tr. Co. v. Oilfield Supply & Scrap Material Co., 202 La. 787, 12 So.2d 819 (1943); Succession of Gravolet, La.App., 193 So. 218 (Orl. Cir. 1940).
As the defense urged, if sustained, would constitute an extinguishment of the obligation it has the same effect as a plea in payment or release and is therefore an affirmative defense. See LSA-C.C.P. Art. 1005 and comments thereunder. The burden of establishing this defense must be carried by the appellant who asserts that he had no knowledge of the title transfer. Cobb v. Davidson, 219 La. 434, 53 So.2d 225 (1951). In commenting upon the exchange of title of the mortgaged automobile the trial court observed: "Under the circumstances set forth, we do not think plaintiff bank acted improperly in the removal of the automobile by Davis from the state of Louisiana to Del Rio, Texas. Defendant Foggin, as well as Mr. Hailey of the bank, knew when the loan was made that Davis' wife was living in the state of Texas, and both could anticipate at that time that he would be driving the automobile to Texas when visiting her." Consideration of the testimony as adduced clearly implies that Foggin understood the car was to be removed to Texas and consented thereto without objection.
Having determined as did the trial court that Foggin had knowledge of the exchange of title certificates this finding *135 is sufficient to dispose of the defense. However, we are also impressed with the fact that the record fails to disclose to our satisfaction any proof that appellant cannot be fully subrogated to all the rights possessed by creditor-appellee. Arguendo, conceding the title transfer was without knowledge and consent of Foggin, it is nevertheless incumbent upon the latter to show that the cannot be so subrogated. The title to the automobile is not in controversy as the mortgagee possessed the same remedy for possession of the vehicle under a Texas title certificate as it would have in the case of a Louisiana title certificate. The only complaint registered by appellant is that because it was necessary to return the automobile from Texas to Louisiana for foreclosure proceedings, certain delays and expenses were incurred by him. This argument is not supported by the record. The automobile was promptly returned to Louisiana where it was foreclosed. Any delays in the sale of the automobile resulted from the acts of appellant rather than of the appellee. Appellant insisted that the bank deliver title to the car which would result in a private sale by Foggin. The mortgagee although offering to assign all of its rights and title to the automobile upon payment of its obligation could not arrange a consent transfer of title. In the absence of an agreement by Davis the only alternative was a judicial sale of the property which was accomplished with due appraisement. Needless to say Davis could have withheld his consent to a transfer of title even though the bank had in its possession a Louisiana certificate of title. Appellant therefore has failed to show that its security has been impaired through the exchange of title of which he complains. Although there was a lapse of approximately a year between the default on the note and the ultimate judicial sale of the automobile such delays will not release the endorser of liability. Bank of Montgomery v. Reeves, La.App., 50 So.2d 214 (2nd Cir. 1951).
Appellant, however, cites in support of its position Glass v. McLendon, et al., La.App., 66 So.2d 369 (2nd Cir. 1953) to the effect that any action by the principal debtor which releases any security without the knowledge or consent of the endorser or surety releases such endorser or surety. Therein this court held that the removal of mortgaged furniture from Louisiana to Arkansas with the consent of the holder of a chattel mortgage note and collateral note given as further security therefor discharged the accommodation maker and endorser of the collateral note to the extent of the value of the furniture removed. In the cited case there was no doubt that the endorser did not have notice of the principal debtor's consent to the removal of the furniture. In holding the defendants had been prejudiced to some degree, the ruling of the court observed:
"* * * The necessity of following the property into another state and taking appropriate action therein for the establishment of their rights would unquestionably be a more cumbersome, inconvenient and expensive operation than would be the case if the furniture had not been removed. Nor is there any assurance that they could locate the furniture or when located that they would find it in the unencumbered possession and ownership of Mrs. McLendon. * * *" [Glass v. McLendon, 66 So.2d 369, 370]
Clearly in the instant case the automobile was returned to Louisiana without any proven impairment as to its value. At the most the only inconvenience sustained by appellant was through its cooperation in assisting the bank at his request to return the vehicle to Louisiana. In carrying out the directions of the endorser the latter is not in a position to complain.
Under the stated facts Wilson v. Brian, La.App., 81 So.2d 142 (2nd Cir. 1955), cited by appellant, is inapposite. There the vehicle was sold to a third party under *136 circumstances which amounted to a conversion and thus the creditor could not subrogate the surety to his rights. Further, Wilson's failure to comply with the provisions of the Deficiency Judgment Statute, LSA-R.S. 13:4106 et seq., likewise operated to discharge the defendant surety. However, herein, the automobile was repossessed in accordance with instructions from appellant and from the time of its repossession remained in defendant's custody until the judicial sale which fully complied with the provisions of the Deficiency Judgment Statute.
The second contention of appellant that the act of repossession of the mortgaged vehicle in Texas was without the consent of Davis precluded its valid seizure and sale in Louisiana is without merit. The objection to the repossession has not been asserted by Davis and at the time of the sale any remedy by him had prescribed. Further, it must be recognized that appellant directed the very procedure used in repossessing the automobile and voluntarily participated therein. He is now estopped from complaining. In the suit for seizure and sale of the car appellant although made a party thereto failed to attack the validity of the decree and he is bound thereby. Allen v. Commercial National Bank in Shreveport, 243 La. 840, 147 So.2d 865 (1963); LSA-C.C.P. Art. 1842.
The trial court found Foggin knew the mortgaged vehicle would be used in Texas by the mortgagor's wife and consented to the exchange of title certificates. In addition to this ruling we are of the opinion the repossession of the vehicle in Texas was approved by and actively participated in by Foggin, and the evidence fails to show impairment of the security by reason of the exchange of the title certificate.
The judgment is affirmed at appellant's cost.
BOLIN, J., dissents with written reasons.
BOLIN, Judge (dissenting).
I disagree with several findings of this and the lower court which I respectfully submit were based on an unfounded assumption indulged in by Mr. Hailey. The majority opinion has quoted the only real factual conclusion reached by the trial judge, i. e.,:
"Defendant Foggin, as well as Mr. Hailey of the bank, knew when the loan was made that Davis' wife was living in the state of Texas, and both could anticipate at that time that he would be driving the automobile to Texas when visiting her." (Emphasis added.)
It is not contended Foggin did not consent for Davis to drive the automobile to Texas for a temporary visit with his wife. However, he strenuously denies he consented for Davis to permanently remove the car. In my opinion, only two people consented to such permanent removal, to-wit: Davis and Hailey, the latter being the vice-president of plaintiff bank. In fact Hailey admitted he never advised Foggin that he had surrendered the title certificate to Davis and consented for him to permanently remove the automobile to Del Rio, Texas. He merely "assumed" Foggin knew of and consented to the removal. I have been unable to find any direct evidence in this record that Foggin consented for Davis to permanently move this car from Louisiana. Any factual conclusion to the contrary must of necessity rest heavily upon the assumption of an officer of plaintiff corporation.
I think the case of Glass v. McLendon (La.App. 2 Cir., 1953) 66 So.2d 369, 370 is controlling, wherein this court said:
"It is a long standing rule of jurisprudence in Louisiana to the effect that *137 an action by a principal debtor which releases any security, without the knowledge or consent of an endorser or surety, relieves the latter; * * *" (Citing numerous cases.)
As soon as Foggin was notified that Davis was in arrears on his payments, he consulted an attorney and was advised to co-operate with the bank in any way possible to get the car back to Louisiana. At this time defendant was in the hospital and Hailey made the arrangements to have the car picked up in Texas by a recovery bureau, and defendant's brother drove the vehicle back to Louisiana. Upon its arrival in this state, defendant was rightfully concerned as to whether the car had been legally seized. On this question the trial judge observed:
"Some question arose as to the legality of the seizure in Del Rio, out of which a dispute ensued between the bank and defendant Foggin as to who should take the responsibility for this; and, although the automobile was brought back to Shreveport in August of 1962, due to the disagreement between plaintiff bank and defendant Foggin as to who should sell it, the car was not sold until October, 1963."
It therefore seems evident defendant's security was materially lessened by plaintiff permanently releasing the automobile to be moved to Texas without his consent.
The only evidence relative to the value of the security which was released was the testimony of Foggin that the car was worth at least $2800, which was in excess of the judgment appealed from.
For the reasons assigned, I respectfully dissent.
Rehearing denied.
BOLIN, J., dissents.